IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

G.Z., by and through his )
natural parent and guardian, )
Stacey Figueroa, )
 )
            Plaintiff, ) Case No. 1:18-cv-298
  v. )
 )
OIL CITY AREA SCHOOL )
DISTRICT, *et al.*, )
 )
           Defendants. )

## MEMORANDUM OPINION

This civil rights action was brought by G.Z. ("G.Z."), a minor, by and through his mother, Stacey Figueroa ("Figueroa"), pursuant to 42 U.S.C. §1983. The Defendants in this action include the Oil City Area School District (the "School District") and three of its employees, *i.e.*: Principal Tammy Newman ("Newman") and teachers Kelly Zerbe ("Zerbe") and Jessica Rodriguez ("Rodriguez"). G.Z. asserts that, while he was enrolled as an elementary school student within the School District, he suffered racial harassment by his fellow students. G.Z. alleges that the Defendants' actions in response to his complaints about the harassment violated his rights under the Fourteenth Amendment.[1]

Pending before the Court is the Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the Defendants' motion will be granted in part and denied in part.

---

[1] The Court has subject matter jurisdiction over this matter is pursuant to 28 U.S.C. §§1331 and 1343.

1

## I. BACKGROUND[2]

G.Z. is a nine-year-old child of Hispanic descent who resides with his mother, Figueroa, in Oil City, Pennsylvania. Second Amended Compl. ("SAC"), ECF No. 16, ¶¶4-5, 11-12. During the 2016-17 and 2017-18 school years, G.Z. was enrolled in the School District at Smedley Elementary School. SAC ¶¶ 16-17. The School District's racial demographic is 96% white, with Hispanics comprising only one percent of the population. Id. ¶13.

G.Z. claims that, during the School Years 2016-17 and 2017-18, he was racially harassed by his peers. SAC ¶17. As an example, G.Z. alleges that five white children in his class (identified as "L.W.," "M.R.," "C.T.," "T." (last name unknown), and "C.S.,") referred to him as a "stinky African" or remarked that he "stunk because of the color of his skin." SAC ¶18. One of these same students pushed G.Z. down a flight of stairs and, on a separate occasion, hit G.Z. in the head with a ball. Id. ¶19. Another student punctured G.Z.'s skin with a woodchip. Defendant Zerbe allegedly knew of these incidents but took no action. SAC ¶20.

After each incident of harassment, G.Z.'s father informed the school of what had taken place. SAC ¶23. This included emails to the superintendent, to Newman, and to G.Z.'s teacher on numerous occasions. Id. ¶24. When complaints were made to Newman, she responded that children were too young to understand the difference in race and color. Id. ¶25. When complaints were lodged about G.Z. being assaulted, Newman variously responded, "[M]aybe it was a mistake," "[M]aybe the child had bad aim," or "[M]aybe the child was initiating a game of dodgeball." Id. ¶26.

---

[2] The following facts are derived from the Second Amended Complaint, G.Z.'s operative pleading. *See* ECF No. 16. For present purposes, we accept G.Z.'s factual averments as true.

2

On another occasion, a child who had previously been reported for bullying G.Z. jumped out of a bush and made intimidating faces at him. SAC ¶27. When the child realized that G.Z. was being walked to school by his mother, the child then smiled as if embarrassed. Id. After reporting this incident to Newman, G.Z.'s parents were told that "children sometimes make faces," and Figueroa "may have misunderstood." Id. ¶28. Newman also informed G.Z.'s parents that there was nothing the school could do about their complaints if they did not report the alleged bullying on the day that it occurred. Id. ¶29.

Dissatisfied with Newman's responses, G.Z.'s parents made complaints to the School District's superintendent, Patrick Gavin. SAC ¶30. Gavin emailed G.Z.'s parents and informed them he would speak to Newman. Id. ¶31. After he did so, Newman called G.Z. to her office and scolded him for having a bad attitude. Id.

In an effort to mitigate future problems, Gavin permitted G.Z.'s parents to select G.Z.'s teacher for the following school year. SAC ¶32. G.Z.'s parents specifically instructed the administration not to place G.Z. in the same classroom as L.W., the student primarily responsible for instigating the harassment. Id. ¶33. Despite this instruction, Newman placed G.Z. in the same classroom as L.W. Id. ¶34. Following this placement, L.W. continued to harass G.Z.. Id. ¶35.

G.Z. claims that none of the administrators have addressed or disciplined the students harassing him, nor have any reports been written or filed, despite the fact that teachers have been aware of – or even witnessed -- the verbal and physical assaults. SAC ¶¶36-37, 40. According to G.Z., Defendant Rodriguez discouraged him from reporting the harassment that other students inflicted on him, stating that it was "tattling." Id. ¶41. G.Z. thereafter stopped reporting instances of assaults to any teachers or administrators. Id. ¶43.

Meanwhile, G.Z. was disciplined for minor infractions such as getting out of his seat or for alleged harassing conduct toward his white peers. *Id.* ¶¶38, 52. The disciplines have ranged from loss of recess to in-school suspension. Id. ¶39. On at least one occasion when Zerbe thought that G.Z. was behaving inappropriately, she made him face his desk towards the wall. Id. ¶21. This segregation lasted for approximately one month and ended only after G.Z.'s parents complained to Newman about it. Id. ¶¶21-22. Zerbe never explained to G.Z.'s parents why she implemented this form of punishment. Id. ¶22.

As a result of these events, G.Z. has suffered trauma, which he continues to address through therapy. Id. ¶45. This lawsuit followed.

## II. STANDARD OF REVIEW

Under federal pleading standards, a complaint need set forth "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). The United States Court of Appeals for the Third Circuit has articulated a three-step process for reviewing the sufficiency of a complaint: first, the court must take note of the elements the plaintiff must plead in order to state a claim; second , the court should identify and discount those allegations that are no more than legal conclusions or restatements of

4

the elements of a claim; third, the court should accept as true any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff's sole cause of action is brought under 42 U.S.C. § 1983,[3] which "is not itself a source of substantive rights," but provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To prevail under § 1983, a plaintiff must prove that a person acting under color of state law deprived him of a right that is secured by the United States Constitution or by federal law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

In this case, it is not disputed that the named Defendants were acting under color of state law for purposes of §1983. Consequently, the Court need inquire only whether G.Z. has

---

[3] The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983.

plausibly alleged the violation of a federal right – specifically, his Fourteenth Amendment right to receive equal protection under the law. U.S. Const. amend XIV, §1.

To prevail on his equal protection claim, G.Z. must demonstrate that he belonged to a protected class and was treated differently from similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000). In addition, G.Z. must show that the discrimination was purposeful or intentional rather than incidental. *Id.* Intentional discrimination can be shown when, among other things, a facially neutral law or policy is applied differently on the basis of race. *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 532 (3d Cir. 2011) (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).; *see also Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (To state an equal protection claim based upon selective enforcement of the law, a plaintiff must show: (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right.)

A.  <u>Plaintiffs' Claims Against the Individual Defendants</u>

Defendants move to dismiss G.Z.'s claims against Newman, Zerbe, and Rodriguez on the ground that G.Z. has failed to allege a plausible equal protection violation. In particular, they contend that G.Z. has not alleged he was treated differently from other similarly situated individuals or that the disparate treatment was based on membership in a protected class.

The Court does not agree. The underlying concern when analyzing the sufficiency of a pleading is adequate notice: i.e., the complaint allegations must not be "so undeveloped that

6

[they do] not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). To that end, "a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Instead, "the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s].'" *Id.* (quoting *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556)) (alteration in the original).

Here, G.Z., who is Hispanic, has alleged that he was treated differently from the white children at his school, in that he was disciplined for alleged acts of bullying or even minor infractions, while white children who bullied or assaulted him were not disciplined at all. *See* SAC ¶50 ("The School District has a policy to investigate and discipline allegations of harassment and/or bullying."); *id.* ¶51 ("Defendants failed to apply the policy when the allegations were made by Plaintiff against his white peers."); *id.* ¶52 ("Defendants applied the policy and investigated allegations of bullying when the allegations were made by white peers against Plaintiff. As a result, Plaintiff was disciplined."). G.Z. has alleged that he was otherwise similarly situated to his non-Hispanic peers. *Id.* ¶54. Such an inference is reasonably supported by the fact that the comparators in question are all school children within G.Z.'s class who attend the same school and who interacted with the same student body, staff, and administrators. G.Z. has thus met the requisite pleading standard by providing "a short and plain statement of [his] claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Defendants object, however, that G.Z. has failed to allege specific instances where disparate treatment occurred. They contend, for example, that G.Z. "fails to allege with any specificity instances where other students outside [G.Z.'s] protected class were subject to

harassment or assault and where their harassers or assailants were disciplined or not for such behavior." ECF No. 19 at 5. Similarly, Defendants object that G.Z. not identified "circumstances where he was in fact accused of bullying and harassment and what discipline he was subjected to as a result." *Id.*

In this Court's view, Defendants' objections overstate the relevant pleading standard. Other courts within this circuit have persuasively concluded that a "plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'" *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014) (quoting *Phillips*, 515 F. 3d at 244). Rather, "[g]eneral allegations that a plaintiff was treated differently from others similarly situated are sufficient." *Shkedi v. City of Scranton*, No. 3-CV-14-2069, 2015 WL 1505660, at *10 (M.D. Pa. Apr. 1, 2015). Here, G.Z. has alleged that the disparate treatment occurred in the context of Defendants' selective enforcement of an otherwise facially neutral discipline policy. That is enough to satisfy the pleading standards set forth above.

Defendants also object that G.Z. has not pled facts establishing that G.Z. was treated differently because of his membership in a protected class. They maintain that the SAC lacks specific allegations of intentional discrimination on the part of the individual Defendants, such as comments, writings, or actions they took "relative to Plaintiff's membership in a protected class." ECF no. 19 at 5.

As discussed, G.Z. need only plead enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of his claim. As set forth in the SAC, G.Z. is a child of Hispanic descent, whose race was presumably evident to the individual Defendants. He has averred that the Defendants intentionally implemented the school's disciplinary policy in a manner that resulted in disparate treatment of him, as compared to

similarly situated white children. The SAC further states that Defendants "deliberately failed to take effective measures to end the harassment and discrimination" to which G.Z. was subjected. SAC ¶53. These allegations are enough to support an expectation that discovery will produce evidence of purposeful discrimination. Of course, discovery may well exonerate the Defendants of any wrongdoing, but, for present purposes, G.Z. has met his pleading burden. *See Connelly*, 809 F.3d at 789 ("[A]t this early stage of the proceedings, it is enough for Connelly to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims.").

Alternatively, Defendants argue that the SAC should be dismissed because Newman, Zerbe, and Rodriguez are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Properly applied, it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Importantly, however, "[q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citation and quotation omitted).

9

At this stage of the proceedings, the Court cannot say that the Defendants' immunity is self-evident from the allegations in the SAC. As discussed, the Court has determined that the SAC adequately states a Fourteenth Amendment equal protection claim. Factual discovery has not yet occurred, and a more developed record is required in order to fully inform the Court's qualified immunity analysis. Accordingly, the Court will deny Defendants' motion to dismiss on qualified immunity grounds. The denial, however, will be without prejudice to Defendants' right to reassert the defense at a later stage of the proceedings, as further discovery may warrant.

B.  Plaintiff's Claim Against the School District

We next address the claims against the School District. Generally, a municipality or local governing body cannot be held liable under §1983 for the constitutional torts of its employees through the doctrine of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, that the government as an entity is responsible under §1983." *Id.*

When a §1983 claim is asserted against a local municipal body, the complaint must allege that the plaintiff's constitutional rights were violated by the execution of an official policy or custom of the governing body. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). To state a facially plausible *Monell* claim, the plaintiff must allege: (1) a policy or custom that deprived the plaintiff of a federally protected right, (2) that the municipality, by its "deliberate conduct," acted as the "moving force" behind the alleged deprivation, and (3) "a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

For *Monell* liability, a "custom" is defined as "an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of

law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Brown*, 520 U.S. at 404). A "policy" is defined as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Simmons v. City of Phila.*, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting *Monell*, 436 U.S. at 690); *see also Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. Jan. 29, 2019). A policymaker is an official with "final unreviewable discretion to make a decision or take an action." *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990). A municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] custom" in the absence of a "conscious decision or deliberate indifference of some natural person." *Simmons*, 947 F.2d at 1063. Accordingly, "to state a Monell claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that 'link the alleged offending policies or customs to' that final policymaker." *Verrecchia v. City of Phila.*, Civil Action No. 16-0284, 2017 WL 264388, at *6 (E.D. Pa. Jan. 19, 2017) (quoting *Rees v. Office of Children & Youth*, 473 F. App'x. 139, 143 (3d Cir. 2012)).

With respect to the School District, Defendants assert that G.Z. has not pled an official custom, policy or practice of the School District that served as the moving force behind the alleged equal protection violation. The Court agrees. Even construed in the light most favorable to G.Z., the SAC does not allege a custom of discrimination toward G.Z. (or toward racial minorities in general) that was so widespread within the School District as to have the force of school district law. Nor has G.Z. alleged the existence of an official School District policy that served as the moving force behind his injuries. While the SAC alleges discriminatory conduct by certain staff members, it does not identify the School District's final policymaker on the matter,

nor does it set forth factual allegations that 'link the alleged offending policies or customs to' that final policymaker." *Verrecchia,* 2017 WL 264388, at *6.

## IV. CONCLUSION

Based upon the foregoing reasons, the Defendants' motion to dismiss the SAC will be denied insofar as it relates to the claims against Newman, Rodriguez, and Zerbe. The motion will be granted insofar as it relates to the claim against the Oil City Area School District. Because the Court cannot say that further amendment of his claim against the School District would be inequitable or futile, Plaintiff will be given leave to amend that claim. *See Mullin v. Balicki,* 875 F.3d 140, 151 (3d Cir. 2017) (When a civil rights complaint fails to state a claim, "a district court must grant leave to amend the complaint unless amendment would be futile or inequitable.").

An appropriate order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge